IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 15-cv-00574-PAB

STEPHEN HUGHS,

     Plaintiff,

v.

OXFORD LAW, LLC,

     Defendant.
_____

**ORDER**
_____

     This matter comes before the Court on plaintiff's Motion for Default Judgment
[Docket No. 16] and Response to Order to Show Cause [Docket No. 21].  The Court
has jurisdiction pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

## I.  BACKGROUND

     Because of the Clerk of Court's entry of default, Docket No. 12, the allegations in
plaintiff's complaint, Docket No. 1, are deemed admitted.  *Olcott v. Del. Flood Co.*, 327
F.3d 1115, 1125 (10th Cir. 2003).  This case concerns defendant's attempt to collect on
a "2006 Drive Financial automobile loan," which debt arose out of transactions that
were primarily for personal, family, or household purposes.  Docket No. 1 at 3, ¶ 12.
Beginning in April 2014, defendant repeatedly called plaintiff seeking payment of the
alleged debt.  *Id.*  ¶ 14.  Plaintiff alleges that the debt is barred by Colorado's six-year
statute of limitations for actions based upon the rights set forth in an instrument
securing the repayment of a loan.  *Id.* at 3, ¶ 13; *see also* Colo. Rev. Stat. § 13-80-

103.5(1)(a). Additionally, defendant failed to timely inform plaintiff that the debt would be assumed to be valid unless disputed within thirty days, that defendant would obtain verification of the debt if plaintiff notified the collector in writing that he disputed the debt, or that defendant would provide plaintiff with the name and address of the company to which plaintiff originally owed the debt if plaintiff notified defendant within thirty days. *Id.* at 4, ¶ 19.

Plaintiff brings four claims for relief under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* Plaintiff's first three claims each rely on the allegation that the debt at issue was barred by the applicable statute of limitations. *See* Docket No. 1 at 4-6. Plaintiff's fourth claim alleges that defendant failed to provide the required notice within five days of defendant's initial communication with plaintiff, in violation of 15 U.S.C. § 1692g(a). *Id.* at 6-7, ¶ 26.[1]

On July 27, 2016, the Court granted plaintiff's motion for default judgment as to his fourth claim for relief, finding that plaintiff's complaint sufficiently alleged a violation of the FDCPA. *See* Docket No. 19 at 5. In contrast, the Court found that default judgment was not appropriate on plaintiff's remaining claims, all of which depended on a finding that plaintiff's debt was barred by a six-year statute of limitations, because plaintiff had failed to establish that his cause of action accrued before April 2008. *Id.* at 6. Because the Court granted plaintiff's request for default judgment only in part, it deferred resolution of plaintiff's statutory damages and attorney's fees until such time

---

[1]In his motion, plaintiff suggests that he also brings claims under the Colorado Fair Debt Collection Practices Act. *See* Docket No. 16 at 1, 3-4. The Court, having reviewed plaintiff's complaint, sees no such claims. Plaintiff's claims are limited to the federal FDCPA. *See generally* Docket No. 1.

as all of plaintiff's claims had been resolved.  *Id.* at 7-8.

Following entry of the Court's order, plaintiff took no action in the case for over a year.  On November 29, 2017, the Court directed plaintiff to show cause why the case should not be dismissed for failure to prosecute.  Docket No. 20.  On December 18, 2017, plaintiff filed a response to the Court's show cause order.  Docket No. 21. Plaintiff requests that the case not be dismissed and provides additional information regarding the accrual dates of his first, second, and third claims for relief.  *See id.*

## II. ANALYSIS

### A.  Default Judgment

In order to obtain a judgment by default, a party must follow the two-step process described in Fed. R. Civ. P. 55.  First, the party must seek an entry of default from the Clerk of the Court under Rule 55(a).  Second, after default has been entered by the Clerk, the party must seek judgment under the strictures of Rule 55(b).  *See Williams v. Smithson*, 1995 WL 365988, at *1 (10th Cir. June 20, 1995) (citing *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981)).

The decision to enter default judgment is "committed to the district court's sound discretion."  *Olcott*, 327 F.3d at 1124 (citation omitted).  In exercising that discretion, the Court considers that "[s]trong policies favor resolution of disputes on their merits." *Ruplinger v. Rains*, 946 F.2d 731, 732 (10th Cir. 1991) (quotation and citations omitted).  "The default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party."  *Id.* It serves to protect plaintiffs against "interminable delay and continued uncertainty as to

his rights." *Id.* at 733. When "ruling on a motion for default judgment, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment." *Seme v. E&H Prof'l Sec. Co., Inc.*, No. 08-cv-01569-RPM-KMT, 2010 WL 1553786, at *11 (D. Colo. Mar. 19, 2010).

A party may not simply sit out the litigation without consequence. *See Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444-45 (10th Cir. 1983) ("[A] workable system of justice requires that litigants not be free to appear at their pleasure. We therefore must hold parties and their attorneys to a reasonably high standard of diligence in observing the courts' rules of procedure. The threat of judgment by default serves as an incentive to meet this standard"). One such consequence is that, upon the entry of default against a defendant, the well-pleaded allegations in the complaint are deemed admitted. *See* Charles Wright, Arthur Miller & Mary Kane, Fed. Prac. & Proc. § 2688 (3d ed. 2010). "Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Id.* at 63. A court need not accept conclusory allegations. *Moffett v. Halliburton Energy Servs., Inc.* 291 F.3d 1227, 1232 (10th Cir. 2002). Although "[s]pecific facts are not necessary" in order to state a claim, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), the well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation and alteration marks omitted). Thus, even though modern rules of pleading are somewhat

forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (quotation and citation omitted).

Plaintiff seeks default judgment on claims brought under the FDCPA. To establish a claim under the FDCPA, a plaintiff must show that (1) he is a "consumer" within the meaning of 15 U.S.C. § 1692a(3),[2] (2) his debt arises out of a transaction entered into primarily for personal, family, or household purposes, 15 U.S.C. § 1692a(5), (3) defendant is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6),[3] and (4) defendant, through its acts or omissions, violated a provision of the FDCPA. *See Nikkel v. Wakefield & Assoc., Inc.*, No. 10-cv-02411-PAB-CBS, 2012 WL 5571058 at *10 (D. Colo. Nov. 15, 2012). As this Court found in its earlier order, plaintiff has established the first three elements of an FDCPA claim by alleging that he is a consumer who incurred a debut for personal, family, or household purposes, Docket No. 1 at 2-3, ¶¶ 5, 12, and that defendant is a "debt collector" as defined by the FDCPA. *Id.* at 2, ¶ 8; *see also* Docket No. 19 at 5. In his first, second, and third claims for relief, plaintiff further alleges that defendant violated §§ 1692d, 1692e, and 1692f of the FDCPA by improperly attempting to collect a time-barred debt. Section 1692d

---

[2]"The term 'consumer' means any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3).

[3]"The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

prohibits a debt collector from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. The provision lists, as an example of such conduct, "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." *Id.* Section 1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," such as a false representation regarding "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e. Finally, § 1692f prohibits a debt collector from using "unfair or unconscionable means to collect or to attempt to collect any debt." 15 U.S.C. § 1692f.

Plaintiff alleges that defendant violated these provisions by repeatedly contacting plaintiff after plaintiff told defendant that he did not intend to pay the time-barred debt, Docket No. 1 at 3-4, ¶¶ 14-15, 17-18, and by attempting to revive the time-barred debt through offers of settlement. *Id.* at 3, ¶ 16; *see also* Docket No. 21 at 4-5, ¶¶ 14-17 (summarizing allegations pertinent to remaining claims). Assuming plaintiff's debt was time-barred in 2014, plaintiff's allegations are sufficient to establish violations of §§ 1692d, 1692e, and 1692f. *See Mazza v. Verizon Washington DC, Inc.*, 852 F. Supp. 2d 28, 38 (D.D.C. 2012) (finding that plaintiff had stated a claim under § 1692d where he alleged that defendant had (1) made repeated phone calls and written requests for payment after plaintiff had denied owing the money and offered proof of payment, and (2) made plaintiff a "settlement offer" under which defendant agreed to accept payment of half of the "current amount due"); *Gilroy v. Ameriquest Mortg. Co.*, 632 F. Supp. 2d

6

132, 136-137 (D.N.H. 2009) (noting that an intent to harass may be inferred for purposes of § 1692d where "the debt collector continue[s] to call the debtor after the debtor ha[s] asked not to be called and ha[s] repeatedly refused to pay the alleged debt"); *Smothers v. Midland Credit Mgmt., Inc.*, 2016 WL 7485686, at *3-5 (D. Kan. Dec. 29, 2016) (finding that defendant violated § 1692e by attempting to "lure" plaintiff into making a payment on a time-barred debt and by detailing "the benefits of paying stale debt" but not the risks that such payment would revive the statute of limitations); *Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507, 513 (5th Cir. 2016) (holding that a "collection letter seeking payment on a time-barred debt (without disclosing its unenforceability) but offering a 'settlement' and inviting partial payment (without disclosing the possible pitfalls) could constitute a violation of the FDCPA").

The Court previously denied plaintiff's request for default judgment as to these claims because plaintiff had failed to establish that the debt was time-barred under Colo. Rev. Stat. § 13-80-103.5(1)(a). Docket No. 19 at 6-7. The Court noted that, in order for plaintiff to establish that defendant's phone calls began when the debt was already time-barred, he would have to show that defendant's cause of action accrued before April 2008. *Id.* at 7. In response to the Court's show cause order, plaintiff asserts that his car was repossessed in 2007 after he stopped making payments on the car loan. Docket No. 21-1 at 2, ¶¶ 5-6. He further alleges that sometime after the repossession, he received a call from defendant stating that the car had been sold at auction and that plaintiff was responsible for the deficiency balance on the loan. *Id.*, ¶ 7.

In *Hassler v. Account Brokers of Larimer Cty., Inc.*, 274 P.3d 547 (Colo. 2012),

7

the Colorado Supreme Court held that the six-year statute of limitations under Colo. Rev. Stat. § 13-80-103.5(1)(a) "begins to run on the date that the [creditor's] cause of action accrues, which is the date that the debt first becomes due." *Id.* at 549. The court further concluded that, in the case of a security agreement to be repaid in installments, a creditor's cause of action accrues when the "installment security agreement is validly accelerated." *Id.* In *Hassler*, the creditor's decision to accelerate the remaining balance on the plaintiff's car loan was evidenced by the creditor's repossession of the plaintiff's vehicle and its issuance of a letter stating that the plaintiff could get his car back by paying the full amount owed on the car loan. *Id.* at 555.

According to plaintiff's allegations, similar circumstances are present in this case. Not only did defendant repossess plaintiff's vehicle in 2007, but it also later called plaintiff to tell him that he was liable for the deficiency balance on the security agreement after the car was sold at auction.[4] Under *Hassler*, these allegations plausibly establish that defendant accelerated the remaining balance on plaintiff's security agreement in 2007. Accordingly, defendant's cause of action accrued, and the six-year statute of limitations began to run, before April 2008. Plaintiff has therefore established that he is entitled to default judgment on his first through third claims for relief.

---

[4]While plaintiff does not allege the date on which he received the letter, the fact that defendant was only seeking to collect a deficiency balance on the car loan is evidence that defendant accelerated the remaining balance on the security agreement at the time of repossession. *See Hassler*, 274 P.3d at 554 n.8 (noting that, if creditor had not accelerated the full amount of the debt prior to the sale of the vehicle, then the creditor would have only been authorized to retain the $6,035 in missed monthly payments from the proceeds of the sale and would have been required to return any additional amount to the plaintiff).

### B.  Statutory Damages

Plaintiff requests $1,000 in statutory damages for defendant's violations of the FDCPA.[5]

The FDCPA provides for statutory damages in an amount "as the court may allow, but not exceeding $1,000."  15 U.S.C. § 1692k(a)(2)(A).  In determining the amount of statutory damages to award, courts are to consider the debt collector's conduct, specifically "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional."  15 U.S.C. § 1692k(b)(1).  "Maximum statutory damages under 15 U.S.C. § 1692k(a)(2)(A) should be reserved for egregious violations of the FDCPA, for example, cases where the defendant repeatedly uses abusive language, improperly threatens legal action or the use of self-help, or aggressively intrudes on a consumer's home, place of employment, or [peace] of mind."  *Lassiter v. Integrity Solution Servs., Inc.*, No. 13-cv-00268-PAB-MJW, 2014 WL 1977216, at *2 (D. Colo. May 15, 2014) (internal brackets and quotation marks omitted) (quoting *Sterling v. Am. Credit & Collections, LLC*, No. 11-cv-03113-DME-BNB, 2012 WL 3553757, at *4 (D. Colo. Aug. 16, 2012)).

Plaintiff's allegations, taken as true, establish that defendant violated multiple FDCPA provisions and engaged in communications aimed at misleading plaintiff into reviving the statute of limitations on time-barred debt.  However, there are no

---

[5]Plaintiff requests an additional $1,000 for defendant's statutory violation of the Colorado Fair Debt Collection Practices Act.  Docket No. 16 at 4.  However, the Court has already determined that plaintiff did not allege claims under the Colorado statute. Docket No. 19 at 2, n.2.

allegations regarding the frequency or tone of defendant's collection efforts.[6]  Weighing

the misleading nature of defendant's communications against the absence of

allegations indicating abusive or threatening conduct, the Court finds that plaintiff has

not established the type of egregious FDCPA violation that would support a maximum

statutory damages award.  *See Clarke v. Nat'l Payment Relief, LLC*, No. 14-cv-01538-

PAB-CBS, 2015 WL 59346, at *4 (D. Colo. Jan. 2, 2015) (concluding that, although

plaintiff's allegations established that defendant had intentionally violated the FDCPA,

the absence of allegations specifying "the frequency of National's collection attempts or

the details of the allegedly abusive or threatening behavior" precluded a finding of the

"sort of egregious violation that supports a maximum award"); *Scadden v. Weinberg,*

*Stein & Assocs., LLC*, No. 12-cv-02454-PAB-MEH, 2013 WL 1751294, at *4 (D. Colo.

Apr. 23, 2013) ("Balancing the falsity of Weinberg's statements against the absence of

any indication that it engaged in a pattern of frequent or persistent misconduct, the

Court finds that an award of $500.00 in statutory damages is appropriate."); *Sterling*,

2012 WL 3553757, at *4 (finding that plaintiff was entitled to $250 in statutory damages

where "the letter was not hostile in tone," "did not threaten legal action or raise the

specter of criminal prosecution or incarceration," and was not "part of a pattern of

frequent or persistent conduct").  Instead, the Court finds that an award of $500 is

appropriate.

## C.  Attorney's Fees and Costs

In addition to statutory damages, plaintiff requests $2,055 in attorney's fees.

_____

[6]Plaintiff alleges only that defendant "repeatedly contacted" him on his home telephone
beginning in April 2014.  Docket No. 1 at 3-4, ¶¶ 14-17.

Docket No. 16 at 6.[7]  Section 1692k(a) of the FDCPA provides that a successful plaintiff

may seek from defendant a "reasonable attorney's fee as determined by the court."  15

U.S.C. § 1692k(a)(3).  To determine a reasonable fee request, a court must begin by

calculating the "lodestar amount."  *Robinson v. City of Edmond*, 160 F.3d 1275, 1281

(10th Cir. 1998).  The lodestar amount is the "number of hours reasonably expended on

the litigation multiplied by a reasonable hourly rate."  *Hensley v. Eckerhart*, 461 U.S.

424, 433 (1983).  A party seeking an award of attorney's fees must establish the

reasonableness of each dollar and each hour for which the party seeks an award.  *Jane*

*L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995).

### 1. Hourly Rate

A "reasonable rate" is defined as the prevailing market rate in the relevant

community for an attorney of similar experience.  *Guides, Ltd. v. Yarmouth Group Prop.*

*Mgmt, Inc.*, 295 F.3d 1065, 1078 (10th Cir. 2002); *Malloy v. Monahan*, 73 F.3d 1012,

1018 (10th Cir. 1996).  The party requesting fees bears "the burden of showing that the

requested rates are in line with those prevailing in the community."  *Ellis v. Univ. of Kan.*

*Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir. 1998).  In order to satisfy his burden, plaintiff

must produce "satisfactory evidence – in addition to the attorney's own affidavits – that

the requested rates are in line with those prevailing in the community for similar

services by lawyers of reasonably comparable skill, experience and reputation."  *Blum*

*v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

---

[7]Plaintiff also requests an award of costs in the amount of $452.  Under
D.C.COLO.LCivR 54.1, plaintiff may seek an award of costs by filing a bill of costs with
the clerk of the court within fourteen days after the entry of final judgment.

Plaintiff requests an hourly rate of $250 for attorneys Angela Troccoli, Craig Thor Kimmel, Tara Patterson, and Amy Bennecoff Ginsburg; $200 for attorneys Steven Medina, Raymond Keenan, and Matthew Gross; and $110 for paralegal Christine Vargas. *See* Docket No. 16-1. In support of these hourly rates, plaintiff relies on (1) decisions from this District establishing reasonable hourly rates for attorneys and paralegals with varying levels of experience, and (2) affidavits submitted by Amy Bennecoff Ginsburg and Craig Thor Kimmel. *See* Docket No. 16 at 5-6; Docket No. 16-2 (Bennecoff Ginsburg affidavit); Docket No. 16-3 (Kimmel affidavit).

The Court finds that $250 is a reasonable hourly rate for attorneys Troccoli, Kimmel, Patterson, and Bennecoff Ginsburg. In 2013, this Court held that $250 per hour was a reasonable rate for Mr. Kimmel and Ms. Bennecoff Ginsburg in an FDCPA action. *See Peterson-Hooks v. First Integral Recovery, LLC*, No. 12-cv-01019-PAB-BNB, 2013 WL 2295449, at *7-8 (D. Colo. May 24, 2013). The Court agrees that the same rate should apply to Ms. Troccoli and Ms. Patterson, both of whom are senior associates with prior experience in litigation and the field of consumer law. *See* Docket No. 16-2 at 9, 13, 14; *see also Philips v. LuckyGunner, LLC*, No. 14-cv-02822-RPM, 2015 WL 3799574, at *6-7 (D. Colo. June 17, 2015) (finding $245 to be a reasonable hourly rate for a senior associate); *Scott v. City & Cty. of* Denver, No. 12-cv-00053-MSK-BNB, 2014 WL 287558, at *2 (D. Colo. Jan. 27, 2014) (noting that billing rates for senior litigation associates in the Denver metro area ranged from $150 per hour to $260 per hour); *Peterson-Hooks*, 2013 WL 2295449, at *8 (finding $250 to be a reasonable hourly rate for then-senior associate Amy Ginsburg in an FDCPA action). The Court

likewise finds that a lower rate of $200 per hour is appropriate for Mr. Medina, Mr. Keenan, and Mr. Gross. Although these attorneys do not appear to have much prior experience in consumer litigation, cases in this District place $200 at the lower end of reasonable hourly rates for attorneys representing clients in FDCPA actions. *See, e.g.*, *Villanueva v. Account Discovery Sys., LLC*, 77 F. Supp. 3d 1058, 1081 (D. Colo. 2015) ("The weight of authority establishes that the prevailing rate in Colorado is $200-$250 per hour for attorneys representing clients in FDCPA cases, depending on the attorneys' experience."); *Crapnell v. Dillon Companies,* Inc., No. 14-cv-01713-KLM, 2015 WL 4484469, at *2-3 (D. Colo. July 22, 2015) (finding that the "low-end of the reasonable rate" for attorneys representing clients in consumer actions, or $200 per hour, was a reasonable rate for an associate attorney in the absence of more detailed information regarding the attorney's experience); *Peterson-Hooks*, 2013 WL 2295449, at *8 (finding $200 to be a reasonable hourly rate for associate attorney with less than two years of experience). Finally, $110 per hour is a reasonable rate for Ms. Vargas, who has a degree in paralegal studies and has been working as a paralegal since approximately 2011. *See* Docket No. 16-2 at 8-9, ¶ 36; *see also Home Loan Inv. Co. v. St. Paul Mercury Ins. Co.*, 78 F. Supp. 3d 1307, 1319 (D. Colo. 2014) (reaffirming that "the average, reasonable hourly rate" for paralegals in Colorado is $100-$110); *Peterson-Hooks*, 2013 WL 2295449, at *8 (finding $110 per hour to be a reasonable rate for a paralegal with significant experience).

### 2. Number of Hours

Plaintiff states that the attorneys and Ms. Vargas expended a total of 9.4 hours

on this case.  Docket No. 16-1 at 4.[8]  In determining the reasonableness of the hours

expended, a court considers several factors.  First, it considers whether the fees pertain

to tasks that would ordinarily be billed to a client.  *See Ramos v. Lamm*, 713 F.2d 546,

554 (10th Cir. 1983), *overruled on other grounds by Penn v. Del. Valley Citizens'*

*Council for Clean Air*, 483 U.S. 711, 717 n.4 (1987).  The Supreme Court has found

non-compensable "purely clerical or secretarial tasks [which] should not be billed at a

paralegal rate, regardless of who performs them."  *Missouri v. Jenkins by Agyei*, 491

U.S. 274, 288 n.10 (1989).  Plaintiff must demonstrate that his counsel used "billing

judgment" in winnowing down the hours actually spent to those reasonably expended.

*Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1257 (10th Cir. 2005).  If not, a court

should take extra care to ensure that an attorney has not included unjustified charges in

his billing statement.  *Id*.  A court should also consider whether the amount of time

spent on a particular task appears reasonable in light of the complexity of the case, the

strategies pursued, and the responses necessitated by an opponent's maneuvering.  *Id*.

"In determining what is a reasonable time in which to perform a given task," an attorney

submitting billing entries should consider the following factors: (1) the complexity of the

case; (2) the number of reasonable strategies pursued; (3) the responses necessitated

by the maneuvering of the other side; and (4) "the potential duplication of services"

caused by the presence of multiple attorneys when one would suffice.  *Ramos*, 713

F.2d at 554.

---

[8]Plaintiff states elsewhere in his motion that the attorneys and their staff spent 30.2 hours on the case.  Docket No. 16 at 5.  Because this number is inconsistent with the attorneys' billing records and the fee award requested by plaintiff, the Court presumes it is a typographical error.

A court should also take extra care to ensure that an attorney has not included unjustified charges in his billing statement. *Praseuth*, 406 F.3d at 1257. Ultimately, the Court's goal is to fix a fee that would be equivalent to what the attorney would reasonably bill for those same services in an open market and fees will be denied for excessive, redundant, and otherwise unnecessary expenses. *Ramos*, 713 F.2d at 553. The burden is on the party requesting fees to prove that its counsel exercised proper billing judgment. *Case v. Unified Sch. Dist. No. 233, Johnson Cty., Kan.*, 157 F.3d 1243, 1250 (10th Cir. 1998) ("Counsel for the party claiming the fees has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks.").

A review of the time entries in this case reveals that one hour of plaintiff's fee request is attributable to non-compensable clerical or administrative tasks, such as e-filing pleadings with the Court, sending pleadings out for service, communicating with the process server regarding service, and receiving proof of service. *See* Docket No. 16-1 at 1-2 (March 20, March 30, May 13, May 15, May 22, and May 28, 2015 time entries); *see also Jenkins*, 491 U.S. at 288 n.10; *Segura v. Midland Credit Mgmt., Inc.*, No. 12-cv-00830-PAB-BNB, 2013 WL 560702, at *3 (D. Colo. Feb. 14, 2013) (deducting time spent on clerical tasks, such as "e-filing court documents, converting documents into PDFs, and sending emails to the Court regarding service of process"). Additionally, the Court finds that Ms. Bennecoff Ginsburg billed the minimum unit of time (0.1 hours or 6 minutes) to review at least six text entry and minute orders that

should have taken less than sixty seconds to review.  *See* Docket No. 16-1 at 2-4 (March 23, May 26, June 4, June 10, September 28, and September 29, 2015 time entries).  Accordingly, the Court will reduce the 0.6 hours billed for this purpose by 0.5 hours.

After accounting for the above reductions, the Court finds that the reasonable number of hours spent by plaintiff's attorneys on this case is 7.8 hours, broken down as follows: 1 hour by Ms. Troccoli; 0.1 hours by Mr. Kimmel; 3.3 hours by Ms. Bennecoff Ginsburg; 0.3 hours by Ms. Patterson; 1.9 hours by Mr. Medina; 0.6 hours by Mr. Keenan; and 0.6 hours by Mr. Gross.  The Court further finds that the reasonable number of hours spent by plaintiff's paralegal on this case is 0.1 hours.

### 3. Lodestar Amount

Based on the aforementioned conclusions, the Court finds that the lodestar figure for plaintiff's attorney's fee request is $1,806, which equals 4.7 hours multiplied by $250 per hour, 3.1 hours multiplied by $200 per hour, and 0.1 hour multiplied by $110 per hour.  This fee award is reasonable given the issues presented in this case and is also adequate to attract competent counsel to similar cases without producing a windfall for attorneys.  *Blum*, 465 U.S. at 893-94.

## III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that plaintiff's Motion for Default Judgment [Docket No. 16] is **GRANTED** in part and **DENIED** in part.  It is further

**ORDERED** that plaintiff Stephen Hughs shall be awarded $500 in statutory

damages.  It is further

**ORDERED** that plaintiff Stephen Hughs shall be awarded $1,806.00 in attorney's fees.  It is further

**ORDERED** that within 14 days of the entry of this Order, plaintiff may have his costs by filing a Bill of Costs with the Clerk of the Court.  It is further

**ORDERED** that this case is closed.


DATED September 6, 2018.

BY THE COURT:


 s/Philip A. Brimmer

PHILIP A. BRIMMER
United States District Judge